UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:11-cr-92 |
| v. | ) | |
| | ) | |
| DEDRICK LINDSEY | ) | *Collier / Lee* |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Dedrick Lindsey's ("Defendant") motion to suppress evidence resulting from his encounter with police [Doc. 14].[1] After careful consideration of the evidence and arguments, I find no constitutional violation supporting suppression and I **RECOMMEND** that Defendant's motion to suppress be **DENIED**.

**I.     FACTS**

Officer Ernest Fielden ("Officer Fielden"), a four-year veteran of the Chattanooga Police Department, testified as follows: On September 1, 2011, Officer Fielden was alone on routine patrol in a high-crime area in east Chattanooga. Officer Fielden described this area as one of Chattanooga's worst drug and gun crime areas, noting that about seven out of ten shootings in Chattanooga take place in east Chattanooga.

Around an hour before the incident at issue, Officer Fielden noticed a Chrysler sedan in the area. Officer Fielden did not know the driver or occupant of the vehicle, but he became suspicious they might be involved in drug activity based on his observations. About an hour later, around 5:00

---

[1] The motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 15]. The Government filed a response in opposition [Doc. 17] and an evidentiary hearing was held on January 25, 2012. In addition, each of the parties submitted post-hearing briefs [Doc. 19 & Doc. 20], which have been fully and carefully considered.

p.m., Officer Fielden saw the vehicle again. Because of his suspicions, Officer Fielden had been looking for the vehicle and for a reason to pull it over. The driver of the vehicle provided such a reason: the driver, later identified as Melvin Brummit ("Mr. Brummit"),[2] was not wearing his seatbelt while operating the vehicle. Upon seeing Officer Fielden, Mr. Brummit froze briefly, attempted to avoid detection by leaning behind the driver's side door post, and then put on his seatbelt. As the vehicle drove past his patrol car, Officer Fielden initiated his emergency equipment in order to conduct a traffic stop based on the driver's violation of Tennessee's seatbelt ordinance.

In Officer Fielden's experience, the vehicle took a longer-than-usual time to stop, slowing and starting back up again for a few blocks as the driver appeared to be looking for a place to pull over. As he followed the vehicle, Officer Fielden noticed the front seat passenger, later identified as Defendant, opened the front passenger side door and held it ajar while the vehicle was still in motion. When the vehicle rolled to a stop a few blocks after the officer initiated his emergency equipment, Defendant "jumped" out of the vehicle and immediately began walking away. Defendant had his back to Officer Fielden and Defendant's hands were in the front of his waist and, from the back, it appeared to Officer Fielden that Defendant was making a pulling or tugging motion with his arms.

Officer Fielden drew his weapon and ordered Defendant to stop and show his hands. Officer Fielden admits he had not observed any violation of the law by Defendant at the time he drew his weapon. Instead of stopping as ordered, however, Defendant ran away. Mr. Brummit also left the vehicle, walking or running away in the opposite direction from Defendant. Officer Fielden

---

[2] The last name of the driver may instead be spelled "Brummitt," but the government's brief spells it Brummit, and that spelling will be used for consistency.

2

considered this to be a ploy and he chose to focus his attention on Defendant. Officer Fielden called for back-up on his shoulder radio as he chased Defendant.

During Defendant's flight, Officer Fielden yelled for Defendant to stop and show his hands. As Defendant ran, Officer Fielden could see Defendant was holding a small, dark, steel handgun in his right hand. Officer Fielden commanded Defendant to stop and drop his weapon. Instead of obeying this command, Defendant threw his handgun into a wooded area and continued to flee. Officer Fielden continued to pursue Defendant and eventually used his taser to stop Defendant. Once stopped, Defendant was placed in handcuffs. This entire incident lasted less than five minutes.

After Defendant was in handcuffs, a backup officer arrived on the scene. As the officers walked Defendant back to the patrol car past the wooded area where the gun was thrown, Officer Fielden gave the other officer instructions to recover the handgun. The backup officer recovered a loaded .45 caliber handgun and a bandana from the wooded area where Officer Fielden saw Defendant toss the firearm.

As more officers arrived, Officer Fielden learned from one of the backup officers that Defendant had several prior felony convictions and had recently been in the news. Defendant was transported to the hospital and informed of his Miranda rights by Officer Fielden. At the hospital, Officer Fielden asked Defendant if he (Defendant) was going to shoot him (Officer Fielden). Defendant replied that he thought about it because he had a long criminal record and considered being killed by the police as an alternative to more jail time (i.e., suicide by cop).

I **FIND** the testimony of Officer Fielden was consistent, thoughtful and credible. No aspect of his testimony was impeached or controverted in any meaningful way. Therefore, I **FIND** his testimony provides an accurate description of the relevant events at issue.

The parties stipulated that Defendant was charged in state court on charges of evading arrest, tampering with evidence, unlawful possession of a weapon, and unlawful possession of drug paraphernalia.[3] Subsequently, Defendant was indicted in federal court on the pending charge of unlawful possession of a firearm and ammunition [Doc. 1].

## II. ANALYSIS

The dispute in this case centers on when Defendant was seized for purposes of the Fourth Amendment. Defendant seeks to suppress all evidence, and particularly the handgun, based on his contention that the police lacked reasonable suspicion or probable cause to stop him at gunpoint as he walked away from the traffic stop. The government argues the police had probable cause to stop the vehicle due to the safety belt violation and at least a reasonable suspicion of criminal activity for the detention of Defendant the moment he exited the vehicle.[4]

### A. The Fourth Amendment

The Fourth Amendment prohibits "unreasonable searches and seizures" by federal law enforcement and, by incorporation, the Fourteenth Amendment prohibits the same by state law enforcement. *See Aguilar v. Texas*, 378 U.S. 108 (1964); *Mapp v. Ohio*, 367 U.S. 643 (1961). A defendant, as the proponent of a motion to suppress, generally bears the burden of establishing his Fourth Amendment rights were violated, *see Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978), but it

---

[3] The drug items found in the car were later claimed by the driver.

[4] Initially, the parties focused on whether Defendant was lawfully seized either (1) when Officer Fielden drew his weapon and ordered Defendant to stop as he walked away from the vehicle or (2) when Defendant was tasered and handcuffed after the foot chase. At the hearing, Defendant conceded there was a lawful basis for seizing him after the foot chase and gun toss, but he argued a Fourth Amendment violation occurred earlier when Officer Fielden ordered Defendant at gunpoint to stop as Defendant walked away from the traffic stop.

4

is the government's burden to demonstrate by a preponderance of the evidence that a stop was constitutional. *See United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990); *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001).

There are three types of constitutionally permissible warrantless encounters between police and citizens: "'(1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; (2) a temporary involuntary detention or *Terry* stop which must be predicated upon reasonable suspicion; and (3) arrests which must be based upon probable cause.'" *United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009) (quoting *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008)). Consensual encounters are not subject to Fourth Amendment scrutiny but all seizures, including brief investigatory stops, receive Fourth Amendment protection. *United States v. Beauchamp*, 659 F.3d 560, 566 (6th Cir. 2011). The stop of a vehicle and detention of its occupants is a seizure–a non-consensual, investigative detention–under the Fourth Amendment. *United States v. Gross*, 550 F.3d 578, 582 (6th Cir. 2008). If the initial traffic stop is unlawful, then the evidence obtained from that illegality must be excluded as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

Officer Fielden's testimony that Mr. Brummit was driving while not wearing a safety belt was not controverted or impeached and Defendant has not advanced any argument or evidence to claim the traffic stop was unlawful. Both the law and evidence compel a finding that Officer Fielden properly stopped Mr. Brummit for violating Tennessee's safety belt ordinance, which provides that a person in a forward moving vehicle must be restrained by a safety belt. Tenn. Code Ann. § 55-9-603(a)(1); *United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010) (officer's observation that a

5

moving car's front seat occupant was not wearing a seatbelt gave police the authority to stop the car for a violation of Tennessee's safety belt law). Thus, I **FIND** (and Defendant essentially concedes) Officer Fielden legitimately initiated a traffic stop.[5]

In such a traffic stop, all occupants are considered seized even though the command to stop is directed at the driver. *Brendlin v. California*, 551 U.S. 249, 255 (2007); *Street*, 614 F.3d at 232. While a vehicle and its occupants are seized in a traffic stop, they are only seized "insofar as they can be deemed to have submitted to the officers' show of authority." *Jones*, 562 F.3d at 773. "There is no seizure without actual submission" and without actual submission, "there is at most an attempted seizure." *Jones*, 562 F.3d at 774 (quoting *Brendlin*, 551 U.S. at 254) (internal citations omitted) and citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (holding a seizure is not effected through a show of authority until the subject actually yields)). The undisputed evidence amply demonstrates Defendant did not actually submit to Officer Fielden's authority or force as a result of the traffic stop.

Likewise, Defendant failed to submit to Officer Fielden's commands to stop and show his hands as he initially walked and then ran away from the traffic stop. Although Defendant attempts to frame the determinative issue as being whether there was probable cause or reasonable suspicion to justify his seizure when he exited the vehicle and walked away, the legally relevant issue for

---

[5] Officer Fielden's true motivation for making the stop is of no legal consequence. *See United States v. Canipe*, 569 F.3d 597, 601 (6th Cir. 2009) (because officer possessed probable cause to believe a seatbelt violation occurred, the officer's subjective motivation for making the stop did not undermine the constitutionality of the stop); *United States v. Hughes*, 606 F.3d 311, 315 n.7 (6th Cir. 2010) ("[I]t is possible for there to be probable cause for a stop even where the facts that give rise to that probable cause (such as a violation of traffic laws) plays no role in an officer's decision to make the stop.").

Fourth Amendment purposes is whether Defendant was actually seized. Because the Fourth Amendment governs actual seizure, not attempted seizures, the government need not justify Officer Fielden's *attempt* to stop Defendant. *United States v. Smith*, No. 10-1551, 2012 WL 181393 (6th Cir. Jan. 24, 2012) (holding that police need not justify their attempt to stop a defendant who evades their attempt). If a suspect is not seized because he evades the police, the Fourth Amendment is simply not implicated. *Brendlin*, 551 U.S. at 254; *United States v. George*, No. 10-6159, 2012 WL 128402, at *1 (6th Cir. Jan. 17, 2012) ("Without actual submission, 'there is at most an attempted seizure.'") (quoting *Jones*, 562 F.3d at 774 and *Brendlin*, 551 U.S. at 254); *United States v. Smith*, 594 F.3d 530, 535-36 (6th Cir. 2010) ("In order for a seizure to occur, the encounter must not be consensual and the officers must use physical force or the individual must submit to the officers' show of authority.").

The government does not dispute that Officer Fielden engaged in a show of authority. Defendant does not appear to contest that he failed to submit to Officer Fielden's show of authority; instead, Defendant contends he was seized, perhaps by physical force, the moment Officer Fielden's gun was drawn and pointed at him. The case law simply does not support Defendant's position.

A person is seized "'when, by means of physical force or a show of authority, his freedom of movement is restrained.'" *George,* 2012 WL 128402, at *1 (quoting *United States v. Mendenhall*, 446 U.S. 544, 553 (1980)). "When a seizure is effected by a show of authority rather than physical force, 'an individual must actually yield to the show of authority to be seized within the meaning of the Fourth Amendment.'" *Id.* at *1 (quoting *United States v. Johnson*, 620 F.3d 685, 690 (6th Cir. 2010); *see Hodari D.*, 499 U.S. at 626-27)). "Whether a person has in fact submitted to authority depends on "what [that] person was doing before the show of authority . . . ." *Brendlin*, 551 U.S.

at 262. The *Brendlin* Court offered two examples: "a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." *Id.*

Decisions of the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") foreclose Defendant's argument. For example, in *Jones*, a passenger who jumped out of a car after the car was hemmed in by police, as if to run away, was not seized until he complied with an officer's order to stop. 562 F.3d at 774. Similarly, a man who "ignored the command" of an officer to stop was not seized until the officer drew his weapon and the suspect raised his arms. *United States McCauley*, 548 F.3d 440, 441-43 (6th Cir. 2008). In the context of a § 1983 lawsuit, the Sixth Circuit specifically held that even shooting at a fleeing felon, but missing, is not a seizure. *Adams v. City of Auburn Hills*, 336 F.3d 515, 519-20 (6th Cir. 2003). Again, it is the suspect's *compliance* with an officer's show of force, and not the show of force itself, that is necessary to effect the seizure.

Defendant argues that *Hodari* and its progeny should be read narrowly (or somehow deemed incorrectly decided). The crux of Defendant's argument appears to rest on Officer Fielden's use of "deadly force" when he pointed his gun at Defendant. In effect, however, this argument has already been squarely rejected by the Sixth Circuit, which succinctly stated:

> A "seizure" triggering the Fourth Amendment's protections occurs only when government actors have, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
>
> In *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), the Supreme Court stated: "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *See also Brower v. County of Inyo*, 489 U.S. 593, 597, 109 S.Ct.

8

1378, 103 L.Ed.2d 628 (1989) (finding that a Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means *intentionally* applied.") (emphasis in original).

In *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the Supreme Court held that where police make a show of authority but the subject does not yield, there is no seizure for Fourth Amendment purposes. In *Hodari*, police chased a juvenile who discarded cocaine while fleeing, before he was tackled by an officer. The Court ruled that the cocaine could be introduced in the criminal proceeding because the defendant had not been seized before the officer took possession of the drugs. Because the defendant did not comply with the order to stop, "he was not seized until he was tackled." *Id.* at 629, 111 S.Ct. 1547. The word "seizure," according to the Court, does not apply "to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee." *Id.* at 626, 111 S.Ct. 1547.

This court specifically has held that shooting at a fleeing felon, but missing, is not a "seizure."
. . .
The use of deadly force standing alone does not constitute a seizure, and absent an actual physical restraint or physical seizure, the alleged unreasonableness of the officers' conduct cannot serve as a basis for a § 1983 cause of action anchored in the Fourth Amendment.
. . .
Courts outside the Sixth Circuit also have addressed whether shooting at a car—but not hitting or stopping the individuals inside of it—is a violation of the Fourth Amendment. *See e.g., Latta v. Keryte*, 118 F.3d 693, 699–700 (10th Cir.1997) (finding that the plaintiff was "seized" only when he stopped at a roadblock and not when the defendant-officer shot the tires of plaintiff's car in an unsuccessful pursuit); *Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir.1993) ("[T]he shots that were fired at the truck and that did not hit [plaintiff] were not seizures because they too failed to produce a stop."); *McAllister v. New York City Police Dept.*, 49 F. Supp. 2d 688, 698–99 (S.D.N.Y.1999) (granting defendant-officers' motion for summary judgment on plaintiff's excessive force-shooting claim because plaintiff suffered no damage when police fired into the car but the plaintiff was not hit or hurt); *Palmer v. Williamson*, 717 F. Supp. 1218, 1223 (W.D.Tex.1989) ("[M]ere firing does not establish a 'seizure' within the meaning of the Fourth Amendment.... [E]ven if [the officer] meant to stop [the plaintiff] by firing his gun at the car

9

as it pulled away, [the plaintiff] was not stopped.").

*Adams*, 336 F.3d 515, 519-20 (internal citation to *Cameron v. City of Pontiac*, 813 F.2d 782 (6th Cir. 1987) and quotation marks omitted).

I **FIND** Defendant was not seized within the meaning of the Fourth Amendment when Officer Fielden drew his weapon and ordered Defendant to stop and show his hands. This finding is not an affront to the Constitution as claimed by Defendant. Defendant willingly forfeited a court determination of the reasonable suspicion or probable cause supporting Officer Fielden's attempted detention when he fled, abandoning his gun in the process. Instead, Defendant was only seized when he was brought down by taser and handcuffed and Defendant does not contest and, indeed, could not credibly contest, that seizure.

### B. Abandonment

A defendant who abandons contraband prior to his seizure cannot challenge its admission–even if the abandonment was prompted by unlawful police conduct. *Hodari D.*, 499 U.S. at 623-24, 624 n.1; *United States v. Martin*, 399 F.3d 750, 752-53 (6th Cir. 2005) ("[T]he fourth amendment does not apply to anything one may abandon while fleeing the police in an attempt to avoid a seizure."). Because Defendant "dropped the gun before he was seized, the gun was abandoned and lawfully recovered by the police." *See George*, 2012 WL 128402, at *1. I **FIND** Defendant discarded his handgun before he was seized, and thus the handgun is not the fruit of a seizure. *See George*, 2012 WL 128402, at *2 (citing *Hodari D.*, 499 U.S. at 629; *Martin*, 399 F.3d at 753). Accordingly, I **CONCLUDE** Defendant cannot invoke the Fourth Amendment's

protections.[6]

### III. CONCLUSION

For the reasons stated herein, I **RECOMMEND** that Defendant's motion to suppress [Doc. 14] be **DENIED**.[7]

/s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[6] Defendant contends his statement at the hospital should be suppressed as "fruit of the poisonous tree." As Defendant's argument for suppression of his statement is dependent on the outcome of his seizure argument, the Court does not need to address it separately.

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).